NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT LEONARDIS, | : | Civil Action No. 18-13098 (SRC) |
| Plaintiff, | : | |
| v. | : | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff Robert Leonardis ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning July 7, 2014. A hearing was held before ALJ Brian LeCours (the "ALJ") on May 30, 2017, and the ALJ issued an unfavorable decision on July 18, 2017. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of July 18, 2017, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform light work, with certain additional limitations, including no climbing and only occasional operation of pedal controls. At step four, the ALJ also found that Plaintiff is unable to perform any past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded with four principal arguments: the ALJ erred at steps two, three, four and five.

Plaintiff's case on appeal suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. In such a case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability. In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.

With the exception of the argument about step five, Plaintiff's appeal rests on arguments which contend, generally, that the ALJ failed to do something that the law requires. The problem for Plaintiff with each of these arguments, however, in one word, is: Shinseki. It is not enough to show the presence of an error. Pursuant to Shinseki, Plaintiff bears the burden of proving that he was harmed by this error. Plaintiff's brief, however, fails to recognize this. Instead of demonstrating that any alleged error was material and prejudicial, Plaintiff argues only that the ALJ erred. At steps two, three, and four, Plaintiff bears the burden of proof of disability; on appeal, Shinseki requires, additionally, that Plaintiff show that an error was harmful. None of Plaintiff's arguments are even directed to satisfying the requirements of Shinseki. Since Plaintiff, on appeal, must demonstrate that an error was harmful, but has failed to do so, the Court concludes that Plaintiff has not satisfied the requirements of Shinseki.

In a nutshell, Plaintiff's case on appeal rests largely on claiming that Plaintiff has morbid obesity, carpal tunnel syndrome, and peripheral neuropathy in his feet, the effects of which combine to disable him, and the ALJ's decision is either contrary to the medical evidence of these conditions or fails to consider their disabling impact when considered in combination. Conspicuously absent from Plaintiff's brief are citations to medical evidence that supports greater limitations than the ALJ determined. At the first four steps of the analysis, Plaintiff

3

bears the burden of proof. Plaintiff does not muster the evidence to demonstrate that the impairments, separately or in combination, have a disabling impact beyond that found by the ALJ, which would provide a foundation for the argument that the ALJ's alleged errors harmed him.

Plaintiff first argues that the ALJ's decisions at steps two and three are unreviewable. Yet Plaintiff proceeds to articulate challenges to the ALJ's decisions at both steps. At step two, Plaintiff contends that the ALJ erred in failing to find that Plaintiff's spinal impairments were severe. Plaintiff cites the report of Dr. Aragona, dated July 28, 2014, which states that an MRI of the neck showed some small disc herniations. (Tr. 279.) The Commissioner argues in response that Dr. Aragona wrote, in a report dated November 13, 2014: "I would conclude that his MRI findings referable to his neck are not correlated with clinical findings." (Tr. 286.) The Commissioner contends that the ALJ's decision that these MRI findings were not associated with any actual severe impairment is supported by this substantial evidence.

The Third Circuit has interpreted the relevant Rulings and Regulations to hold that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The Newell Court further emphasized:

> An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 SSR LEXIS 19 at *6-8. Only those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits at step two. *See Bowen*, 482 U.S. at 158 (O'Connor, J., concurring). If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue. *See Smolen v. Chater*, 80 F.3d at 1290. Reasonable doubts on severity are to be resolved in favor of the claimant.

Newell, 347 F.3d at 546; accord McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.") In McCrea, the Third Circuit reaffirmed the severity standard announced in Newell and added that, in light of the low threshold for severity, findings that an impairment is not severe "should be reviewed with close scrutiny" and are "certain to raise a judicial eyebrow." McCrea, 370 F.3d at 357.

In this case, under the *de minimis* standard set forth in Third Circuit law, the evidence does not support a determination that the ALJ erred in determining that Plaintiff's disc herniations are not a severe impairment at step two. The undisputed evidence of record shows that treating physician Dr. Aragona evaluated Plaintiff's neck over a period of several months and concluded that the MRI results are associated with no clinical findings. (Tr. 286.) Dr. Aragona's assessment is unambiguous. Furthermore, the records from Dr. Aragona show that Dr. Aragona treated Plaintiff for his carpal tunnel syndrome, not for any neck problems. (Tr. 279-293.) Even under the *de minimis* standard, the ALJ's determination is supported by substantial evidence.

Moreover, even if this Court were to find that the ALJ erred at step two, Plaintiff has not demonstrated that he was harmed by any such error. At step two, the ALJ found three other severe impairments. Had the total count been four, instead of three, it would not have made any difference to the outcome. This Court finds no error at step two, nor any evidence that Plaintiff was prejudiced by this determination.

Next, at step three, Plaintiff argues that the ALJ erred because the decision says little more than the conclusion that Plaintiff meets the requirements of no Listing, considering his

severe impairments individually and in combination. (Tr. 28.) Plaintiff argues that the ALJ failed to comply with Third Circuit law, as stated in Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). In Diaz, the Third Circuit remanded the case because, at step two, the ALJ found obesity to be a severe impairment, but there was no discussion at step three about the combination of obesity with joint dysfunction, and common sense suggested that the former might well exacerbate the latter. Id. at 504-505.

In opposition, the Commissioner distinguishes Diaz on the facts, and this Court agrees. In Diaz, the Third Circuit stated: "Were there any discussion of the combined effect of Diaz's impairments, we might agree with the District Court" (that the ALJ did not err.) Id. at 504. In the instant case, at step three, the ALJ wrote: "In arriving at this conclusion I have considered the impact of the claimant's obesity in accordance with the relevant Social Security rulings." (Tr. 28.) Thus, the ALJ stated that he considered the issue, as required by Third Circuit law. In Diaz, the ALJ made no reference to the consideration of obesity at step three. Moreover, in Diaz, the Third Circuit found a basis to consider the impact of a particular combination of impairments, obesity and joint dysfunction. 577 F.3d at 504. Here, Plaintiff argues that the combination of obesity, peripheral neuropathy, spinal problems, and carpal tunnel syndrome are the equivalent of Listings 1.04 (disorders of the spine) and 11.04 (peripheral neuropathy).[1] This Court has already determined that the ALJ's determination that the spinal problems do not constitute a severe impairment is supported by substantial evidence, which leaves three severe impairments that could combine to equal one specific Listing, 11.04 (peripheral neuropathy).

---

[1] Plaintiff also writes that the combination of impairments is equivalent to SSR 02-1p, which is not a Listing. (Pl.'s Br. at 20.) This Court construes this as a scrivener's error and concludes that Plaintiff meant to write that the ALJ erred *in light of* SSR 02-1p.

In Diaz, the Third Circuit stated that it was a "matter of common sense" that the obesity might have exacerbated the knee joint dysfunction, but Plaintiff here has offered this Court no basis to arrive at an analogous conclusion. 577 F.3d at 504. Here, Plaintiff has not made any argument that the obesity interacts with the peripheral neuropathy. At step two, the ALJ stated that Plaintiff's complaints of numbness in the hands and feet supported the inference that peripheral neuropathy was a severe impairment. (Tr. 27.) Because, in the instant case, the ALJ stated that he considered the combined effect of obesity with the other severe impairments, and because Plaintiff has offered no evidence suggesting any interaction between the obesity and the peripheral neuropathy, this Court concludes that the ALJ's statement that he considered the combination is sufficient under Third Circuit law. Diaz is distinguishable.

Moreover, because of this distinction, Plaintiff's Diaz argument has the effect of giving the Commissioner the burden of disproof of disability at step three, contrary to law. Plaintiff bears the burden of proof at step three. The Supreme Court has held: "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990). This is the law, and Diaz cannot be construed or applied so as to contradict Sullivan. Plaintiff did not even attempt to demonstrate that the medical findings are equal in severity to all the criteria for Listing 11.14. The Commissioner bears no burden of disproof of equivalence.

Lastly, SSR 02-1p does not support Plaintiff's step three arguments, but weakens them:

> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.
> . . .

7

> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

2002 SSR LEXIS 1 at *14-15. Plaintiff here did not even attempt to make a demonstration that "the combination of impairments is equivalent in severity to a listed impairment." Id.

Plaintiff argues that his impairments, in combination, are equivalent in severity to Listing 11.14, but overlooks the ALJ's statement that he considered this issue:

> The claimant's peripheral neuropathy, and carpal tunnel syndrome, although severe, were at no time accompanied by the necessary levels of abnormal findings to satisfy the criteria of any of the neurological listings.

(Tr. 28.) Thus, the ALJ stated that he had considered the neurological listings, which includes Listing 11.14, and found that the requirements were not satisfied. Plaintiff has pointed to no evidence to the contrary.

This Court finds that the ALJ's determination at step three that Plaintiff does not meet or equal the requirements of any Listing is amenable to judicial review. Plaintiff has pointed to no evidence which contradicts or is inconsistent with the ALJ's determination at step three. The step three determination is supported by substantial evidence.

Next, Plaintiff challenges the residual functional capacity determination at step four with contradictory arguments. Plaintiff contends that that the ALJ did not explain the basis for the determination, but then asserts that the determination is based on, and identical to, the findings of agency medical reviewer Dr. Park. (Pl.'s Br. 25.) Plaintiff then challenges the alleged reliance on the opinion of Dr. Park, pointing out that the ALJ determined that the carpal tunnel syndrome was a severe impairment but Dr. Park found that it was not severe. (Tr. 82.)

8

The Court does not find Plaintiff's challenges to the residual functional capacity ("RFC") determination to be persuasive. The plain text of the ALJ's decision does not support Plaintiff's contention that the ALJ gave no explanation for his residual functional capacity determination; to the contrary, the ALJ gave two single-spaced pages of explanation for it. (Tr. 29-31.) The ALJ stated that he gave "great weight" to the opinion of Dr. Park, and noted that Dr. Park had found no significant manipulative limitations. (Tr. 31.) The ALJ stated that Dr. Park had given his opinion without having seen the later-appearing evidence of record, and the ALJ concluded that Dr. Park's findings were consistent with it. (Tr. 31.)

Plaintiff's challenge to the step four determination sets up a straw man and then knocks it down. The straw man is: the ALJ based the RFC solely on Dr. Park's opinion. This is incorrect. The ALJ gave Dr. Park's opinion great weight, but that was only one piece of evidence among many that the ALJ discussed. The ALJ cited a range of pieces of evidence, and found that Dr. Park's opinion was consistent with other evidence of record.

Plaintiff's straw man is assisted by a red herring: Plaintiff finds significance in the fact that the ALJ determined at step two that the carpal tunnel syndrome was a severe impairment, while Dr. Park found that it was not. These are undisputed facts, but how does this constitute reversible error?[2] What does this have to do with the question before this Court, which is, pursuant to § 405(g): is the Commissioner's decision supported by substantial evidence? The fact that the ALJ did not agree with Dr. Park on every single point is a red herring. The ALJ's decision that the carpal tunnel syndrome was a severe impairment is a legally operative

---

[2] Plaintiff's brief contains one sentence which addresses this question: "[Dr. Park's] opinion is not based on the same severity criteria as found by the ALJ himself in the decision." (Pl.'s Br. 28.) Plaintiff offers no analysis, and no legal authority, to support this cryptic statement.

9

determination; Dr. Park's statement to the contrary is his medical opinion. Plaintiff has not shown that this issue has any legal relevance.

Again, the question presently before this Court is: is the Commissioner's RFC determination supported by substantial evidence? As to the issue of manipulative limitations, the ALJ explained that the record evidence showed that Plaintiff had previously manifested difficulties due to carpal tunnel syndrome, but then had a "very successful" surgery that appears to have resolved Plaintiff's functional difficulties. Shortly after the surgery, his surgeon wrote: "he has had complete relief of preoperative symptomatology." (Tr. 285.) The ALJ cited the report of Dr. Curiba, dated December 8, 2014, which stated that a physical examination had been done and reported no problems with Plaintiff's hands. (Tr. 261-62.) In that same report, Dr. Curiba stated, under the subheading, "Subjective," that Plaintiff was feeling well and had "had CTS surgery which got rid of the numbness and tingling in the hands." (Tr. 261.)

Plaintiff claims that he became disabled as of July 7, 2014. The undisputed medical evidence of record shows that, by the end of 2014, two physicians reported complete resolution of the symptoms in Plaintiff's hands. Plaintiff has pointed to no medical evidence of any problems with his use of his hands after the surgery. The ALJ's determination that Plaintiff has no manipulative functional limitations is supported by substantial evidence. The residual functional capacity determination is supported by substantial evidence.

Next, Plaintiff challenges the ALJ's determination at step five, but substantively continues to challenge the basis for the residual functional capacity determination. Plaintiff argues that the ALJ "comments not at all on his obesity or how it would play any part in his workday functioning." (Pl.'s Br. 31.) That is a step four issue, and, at step four, Plaintiff bears

10

the burden of proof of disability. Plaintiff does not point to evidence of record that can demonstrate that Plaintiff's obesity limits his residual functional capacity. Absent that, this Court must conclude that the evidence of record supports the ALJ's inference that it does not.

Plaintiff also argues that the ALJ improperly rejected Plaintiff's subjective complaints of pain because the decision does not mention Plaintiff's testimony about his difficulties with the neuropathy in his feet. While it is correct that the ALJ did not cite Plaintiff's hearing testimony about his feet, this does not mean that he overlooked Plaintiff's complaints about his feet, because the ALJ discussed the evidence about neuropathy of the feet at some length at two points in the decision. (Tr. 27, 30.) At step four, the ALJ discussed the evidence from the Freeman Spine and Pain Institute, which included Plaintiff's reports about his difficulties with the neuropathy in his feet. (Tr. 30.) The ALJ reviewed the medical evidence with regard to Plaintiff's use of his feet, both from that Institute and from Dr. Aragona. (Id.) The ALJ credited the opinion of Dr. Aragona that Plaintiff could not climb due to the neuropathy in his feet, and included a corresponding limitation in the RFC determination. The ALJ also included a limitation to occasional operation of pedal controls. The medical evidence of record supports these two functional limitations to Plaintiff's use of his feet. (Id.) Plaintiff does not point to any evidence of further functional limitations to the use of his feet that the ALJ overlooked. The ALJ considered the evidence about neuropathy in the feet, and this Court finds that the ALJ's conclusion that Plaintiff's neuropathic problems with his feet limit his ability to climb and to operate pedal controls, but not more, is supported by substantial evidence.

Plaintiff has failed to persuade this Court that the ALJ erred in his decision, or that Plaintiff was harmed by any errors. This Court finds that the Commissioner's decision is

supported by substantial evidence and is affirmed.

                                                                              s/ Stanley R. Chesler
                                                        STANLEY R. CHESLER, U.S.D.J.

Dated: October 27, 2020

12